Okay, Arevalo, the United States Attorney General. I'll give you all a few minutes to get settled down. All right, appearing for Mr. Arevalo is Mr. Echols. Good morning, Your Honor. Why don't you take us through, you know, this is sort of a what I call somewhat convoluted case. Yes, Your Honor. I had a lot of trouble going from one number to another number because one was always based on another number. Certainly, Your Honor. For those of us that are kind of slow learners like me, could you waltz us through the whole procedure here? Certainly, Your Honor. May it please the Court, Your Honors. My name is Eli Echols. I represent Jorge Arevalo, the petitioner in this matter. And, Your Honor, I'd be very happy to begin by walking through the statutes as you requested because, in this case, I believe that the government in every sort of instance where they've addressed this matter beforehand, I believe they've gone backwards. I believe to proceed forwards, Your Honor, the first thing to do is to look at the relief that Mr. Arevalo is seeking, which is cancellation of removal and adjustment of status under the special rule for victims of domestic violence, which we find under 8 U.S.C. 1229B, subsection B2. He's not seeking cancellation based on general removal but on the special rule? That's correct. And why is that? Because it's going to be harder for him to get cancellation under the general rule? I believe it's impossible for him to get cancellation. And why is that? Because when Congress wrote, I believe Congress first wrote the regular cancellation statute, and one of the bars is any conviction. The word used is conviction for a crime involving moral turpitude. And Mr. Arevalo, who's a 47-year-old native and citizen of Guatemala who's been here since 1989, he has two convictions that appear to be crimes involving moral turpitude from 1991. Now, that means that because he has those convictions, he's not eligible for regular cancellation of removal, and that's been made clear by the Board in the matter of Bustamante. So he's out on that ground. So special rule is his only hope. That's correct, Your Honor. And if you could then take us through the statutes that Judge Goldberg has. Certainly, Your Honor. So Title 8, Section 1229B is called special rule for battered spouse or child. That's subsection B, subsection 2. And it says the attorney general may cancel removal of and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien, and then it goes through the eligibility factors. Now, the things to note there are that it uses the phrase alien lawfully admitted for permanent residence, which is a defined term, which means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant. That's at 1101A20. So this is a term of art here. Now, so clearly then the – But the problem for your client is as a general matter because he is the term illegal alien. He's not a person who overstayed a visa. He was illegal from the day he walked in and has been illegal for 20-something years. That's true, Your Honor. So the problem is my understanding is when you're here illegally from the get-go, you don't get to walk into the ICE office and say, could you adjust my status. They'll say, well, adjust your status by deporting you. There's no adjustment of status when you're illegal. Is that correct? No, I don't believe that is correct, Your Honor. And actually he was on a path to adjust his status under Section 1255. I'll take that back. He could certainly marry an American citizen or do things like that. And he did marry a U.S. citizen, and unfortunately it turned out to be a very abusive relationship, and he filed a self-petition, which is mentioned in Title 1255, as a vehicle for adjustment of status. And so he was on a path to adjust his status. The problem was that then his self-petition was ultimately revoked and denied. Had he gotten that, he would be home free, correct? He would, Your Honor, yes. All right, so he's trying it something different. Yes, and what he's trying for is something you can only apply for when you are in removal proceedings. So in removal proceedings, he's eligible to ask for cancellation of that removal and adjustment of status. Now, when you go through the eligibility factors for this special rule cancellation, it says that you're not eligible if you are inadmissible under certain subsections of Title VIII, Section 1182. So if you're reading the plain face of the statute, you proceed, you jump over then to 1182 to examine, is he indeed ineligible under that section? And when you read those sections that involve crimes involving moral turpitude, you immediately see that it refers to a waiver of those grounds of inadmissibility later in Section 1182 at subsection H. And when you read down at that subsection, it again cross-references back up to the grounds of inadmissibility bearing on a crime involving moral turpitude and says that they can be waived given certain factors. And that section, that waiver concludes with the language that it is available to people who are applying or reapplying for a visa for admission to the United States or adjustment of status. Now, he would, if he himself, he's not being declared inadmissible or being deported based on his crimes of moral turpitude, although they're the obstacles. But he could use this special rule, I gather. Part of the waiver is, let's say the typical example is the wife's been beaten by her husband for a long period of time. She's illegal, or she's overstayed her visa, or maybe she's straight out illegal. And one day she takes a preemptive strike and says, to heck with you, I'm going to hit you first. And she gets a conviction for that. And my understanding of the waiver rule as to that kind of conviction is limited to we're going to ignore her conviction because she herself had been battered. That's a part of that waiver, is it not? Well, it's not a part of the waiver under Section 1182 subsection H because crime of domestic violence is not a ground of inadmissibility itself. It's not independently. That's actually a ground of removability. And so that's referred to under Section 1227. That is an issue that the government has raised here as an argument that because the special rule cancellation statute refers to that removability waiver, it should have also referred to Section 1182H if it meant to make that available. But I believe, Your Honor, that 1182H is a very old waiver. And I believe that the use of the word inadmissibility is itself an express cross-reference, if you will, to Section 1182, which itself is even more expressly cross-referenced between the grounds and its waiver. The removal waiver is a newer waiver based on domestic violence. And what the cancellation statute is actually doing is expanding the role that waiver can be used for. What it is saying is it even uses odd language. It says the authority provided under Section 237A.7 may apply under paragraphs 1B and 1C of regular cancellation and 2A subroom enumerable for a special rule. Now, it's notable that those first two paragraphs under regular cancellation, the first one is a good moral character rule. So, in other words, the reason they specifically mention the 237 waiver is to expand its use from beyond a simple waiver of ground of removability for domestic violence to address good moral character. And I believe that a plain reading of the word inadmissibility is all you need to jump over to 1182 and down to 1182H. Well, let me get you to a new topic, and we may give you a couple more minutes here. But this was helpful for all of us to just kind of take us through the statute. But the real issue here is we're not looking at this necessarily de novo, at least if the AG's position is sustained. We're talking about Chevron, and we're talking about an agency that has looked at what it deems to be an ambiguous set of regulations and statutes. And the agency has said this is ambiguous, and we interpret it as they have done. And your duty is first to tell us, argue and persuade to us it's not ambiguous. I don't know how you could say it's not. I mean, this is extremely complicated and extremely confusing. And just speaking for me, it seems ambiguous to me. And if that's so, I'd like you to talk to us a bit about why the interpretation by the BIA was not a reasonable one, and we'll give you a couple more minutes to do that. Thank you, Your Honor. So the analogy I would use, Your Honor, is that Mr. Arvalo has been on a treasure hunt here for a good long time, and he and I, studying this map, go through what I just laid out. We start with the relief that's going to be the vehicle for him to get his ability to reside here indefinitely, a great treasure on this planet. We start at the relief. We see he might have an ineligibility. We jump over to the waiver that is explicitly referred to in that grounded ineligibility, right? That's going from beginning to end. From my perspective, and I don't know why this is the case, but in a matter of YNP, in the government's briefing before your court and in the court before the Ninth Circuit, the only other court to have looked at this, the government starts from the end of the story. They start at the waiver itself, and they say that the waiver's use of the word adjustment of status is itself ambiguous. I don't believe that that is a reasonable reading of the statute. The words should be given their normal meaning, and their normal meaning means what appears in many places throughout the statute, not just 1255, not just 1229B, but there's also the Cuban Adjustment Act. There's the Haitian Immigration Fairness Act. There's multiple places where you would adjust your status. You can adjust status after asylum. So you shouldn't be required to say adjustment of status and all of its flavors. The very term adjustment of status globally refers to all the flavors of adjustment of status, and it's a complex, complicated treasure map, if you will, but it is not actually ambiguous. I believe there's a difference between complex and ambiguous. There aren't two reasonable readings of this statute. The statute says the relief, the ineligibility, and the waiver for that ineligibility, and it explicitly says people seeking adjustment of status are eligible. You know, we do, and we're not bound, but we do have the BIA thinking that it's ambiguous, and we have another circuit court, the Ninth Circuit's looked at this, and they said it looks ambiguous to us as well. That's true, Your Honor, and I would beg the court to look at the treasure map from the beginning rather than the end. Start with the relief, work your way through the statute to the waiver rather than the other way around, which for some reason it appears all of those other bodies you referred to have done. All right. Thank you for your time. And we won't count any of this time against him, Valerie. Thank you very much, Your Honor. All right. Good morning. May it please the Court, William Minnick representing the respondent. Petitioner is ineligible for a waiver in admissibility because his application for special rule cancellation does not constitute an application for adjustment of status for purposes of the waiver statute. This Court should defer under Chevron to the Board's decision in matter of YMP because the waiver statute is ambiguous as to what adjustment of status it refers to, and the Board's interpretation that adjustment of status as used in the waiver statute does not include special rule cancellation is reasonable. Regarding Step 1 of Chevron, Section 1182 is ambiguous as to whether special rule cancellation applicants are eligible for the waiver for three reasons. First, the waiver statute does not cross-reference other sections of the Immigration and Nationality Act. Which waiver statute are you talking about now? I'm referring to Section 1182H2. You can call it general waiver or special rule waiver. Which one are you talking about? Right now, I'm not referring to any part of the cancellation or removal statute. I'm referring to the waiver of inadmissibility. You said Section 1182H is what you're talking about right now? Yes, ma'am. Okay. It's 1182H2. It's the portion of the statute that says to be eligible for the waiver, the applicant has to be applying for a visa, admission, or adjustment of status. And I gather, certainly, the petitioner here was not applying for admission to the United States. And the argument is he couldn't. If he had come to your office and said, I'm applying for admission, you'd say, well, you know, you're here illegally. You're not going to get anywhere with that. He's applying for adjustment of status. And my question was, you know, typically if you're straight out illegally and you're here, adjustment of status is not typically something you can do. I guess you can try to make an application if you marry a citizen. That would be one way you try to remove the illegality. That's adjustment of status under Section 1255. That's what most people are talking about when they talk about adjustment of status. And to be eligible for adjustment of status under Section 1255, you have to have been previously admitted to the United States. So a person in petitioner's position who entered without inspection and has never been admitted to the United States just is not eligible for adjustment of status under 1255. And that is sort of, that's part of your argument here, isn't it, that he could not have been in what he was doing here in a cancellation proceeding, actually applying for adjustment of status as you understand that? Is that part of your argument? Well, he's certainly ineligible for adjustment of status under 1255. So going back to Step 1 of Chevron and the ambiguity in Section 1182. So the first reason it's ambiguous is because Section 1182, the waiver statute, doesn't cross-reference another section of the Immigration Nationality Act to explain exactly what adjustment of status it's referring to. The second reason that the statute is ambiguous is because, and I'm going to jump to a different statute now. I'm going to jump to the cancellation statute, subsection B-5 of the cancellation statute. In subsection B-5 of the cancellation statute, Congress specifically clarified that a certain waiver of deportation is available to special rule cancellation applicants. And there would have been no reason for Congress to make that clarification that this one particular waiver is available if other waivers of inadmissibility and deportability were already implicitly available simply by use of the words inadmissible and deportable. Tell us which statute number you're at now, that general cancellation. It's the cancellation of removal statute. It's 1229B is the statute. I thought you had said a different number before. 1229B-5, is that right? Well, there are two Bs. The statute with no subsections is 1229b. And then I'm talking about subsection B-5. So it would be 1229B-5. All right, I've got that here on my notes. But that is the domestic violence waiver, is it not? That's the domestic violence waiver. All right, if you could talk about it in terms of we've got a general waiver and we've got a domestic violence waiver. Maybe if you could use the words, that will help us follow along. So you're now talking about the domestic violence waiver. I'm talking about the domestic violence waiver and the fact that in the cancellation statute, Congress specifically clarified that the domestic violence waiver is available to cancellation applicants. And there would have been no reason for Congress to make that clarification if the general waiver, the 1182 waiver of inadmissibility, was implicitly available simply by use of the word inadmissible in the cancellation statute. So, again, that's a second reason why the language is ambiguous. And the third reason that the language is ambiguous, and, again, I'm going to talk about subsection B-5 of the cancellation statute. In that section, Congress specifically identified something called a cancellation of removal and adjustment of status proceeding. But even though that section demonstrates that Congress knows how to identify such a proceeding when it wants to, that proceeding is not on the list in the waiver statute. In the 1182-H-2 list, Congress gave an express list, a visa admission or adjustment of status.  But subsection B-5 of the cancellation statute demonstrates that Congress knows how to identify that proceeding when it wants to, and it simply didn't include that in its express list in the waiver statute, 1182-H-2. So for those three reasons, the statute's ambiguous. Regarding step two of Chevron, the board's interpretation in matter of YNP, that special rule cancellation. And the domestic waiver, going back to that, that generally is applying, what I said before, the domestic waiver is generally applying to someone who is trying to cleanse themselves of a domestic violence type of conviction. Is that correct? And they can cleanse themselves of that specific type of conviction. Odd statute if they themselves have been victims of domestic. They're both the violent producer and the violent receiver, but somehow that's a wash. But that's not our situation here. That is how that waiver operates, you're correct, Your Honor, and it doesn't apply here because that waiver operates to waive a ground of deportability, which isn't the petitioner's problem in this case. The petitioner's problem in this case is that he's inadmissible under Section 1182-H-2. So that is how that waiver operates, you're correct. And he might not even have been able to take advantage of it. Well, I'm not sure. He has a child abuse conviction himself, although that's not the ground for removing him. But I don't know. I know that there's something I've read where domestic violence waiver does not apply. It applies to some things, but I thought it didn't apply to child abuse, but maybe it's child sexual abuse versus being a child. I'm not sure. We're not sure how it works here. So regarding Step 2 of Chevron, the Board's interpretation is reasonable. But first you're saying for the reasons you said, this is ambiguous. It's ambiguous, Your Honor, for the three reasons that the waiver statute doesn't cross-reference another section of the INA to explain what adjustment of status it's referring to. Subsection B-5 of the cancellation statute, there would have been no reason for Congress to make that clarification if it were clear from the statutory language that an applicant was eligible for the waiver. And three, that that subsection B-5 identifies a cancellation of removal and adjustment of status proceeding, which demonstrates Congress knew it identified that if it wanted to, and yet didn't include that in its list of three things in the waiver statute, the three scenarios when an applicant can apply for the waiver. All right. All right. Reasonable. It's reasonable. Why? Well, the Board gave three reasons in matter of YMP. Why an application for special cancellation is not an application for adjustment of status. The first one that the Board gave was that the two forms of relief are statutory eligibility requirements. I've detailed the different eligibility requirements in my brief, and the Board explained that for adjustment of status under Section 1255, that's something an applicant applies for. He has to have been previously inspected and admitted, and he has to make a showing of admissibility. For a special rule cancellation applicant, on the other hand, the alien simply becomes an LPR as a matter of course, automatically when the removal is canceled. In other words, they don't have a basis to adjust their status. It just happens automatically as a matter of course when the removal is canceled. And a special rule cancellation applicant doesn't have to meet the same eligibility requirements. You're saying that in terms of talking about adjustment of status, it was almost a labeling thing. It was saying this will be the automatic consequence of what's happening, but we're not indicating we're suddenly having an adjustment of status proceeding. That's correct, Your Honor. It's just a conflated sort of the result, the proceeding with the result that would follow. That's correct. I'm not sure I'm right. Is that right? I think you're right, Your Honor. All right. And so the Board, that was the Board's first reason. These are just two fundamentally different things with different application procedures and different eligibility requirements. The second reason that the Board gave, well, this will sound familiar because it was one of the reasons I gave for why the statute's ambiguous, but the Board said, the second reason the Board gave was that, again, this subsection B-5 of the cancellation statute specifically identifies a cancellation of removal and adjustment of status proceeding, yet that is not listed in the waiver statute as one of the three scenarios when a person can apply for the waiver. And the third reason that the Board gave was that its interpretation was consistent with the regulations, and that's 8 CFR 1245.1 subsection F, which provides that for an alien in the United States, an application for adjustment of status under section 1255 is the sole method for requesting a waiver under 1182H. Just give me that number again. Yes, sir. It's 8 CFR, and then it's section 1245.1. It's subsection F. Thank you. And one thing I noted that one of the opinions of BIA or the Ninth Circuit, I think it was the BIA's, they've indicated there would be a real illogical consequence based on the interpretation here that legal aliens would be unable to adjust status or do whatever they're trying to accomplish, but illegals would. Could you take me through how that works? You know the example I'm talking about, how, in a practical sense, what the BIA was talking about. Yes, Your Honor. That was the Board in matter of YMP. It's in their discussion about why an applicant for special rule cancellation isn't applying for an admission. As far as that portion of the Board's decision goes, this court has already decided in Povida and Rivas, those cases are cited on page 9 of the government's brief, that admission, as used in Section 1182H2, means someone outside the United States who's seeking admission into the United States at a port of entry. So I don't think under this court's case law that there's any case to be made that this petitioner is applying for an admission. But nevertheless, the language that Your Honor was asking about is in the portion of YMP where the Board was explaining why a special rule cancellation applicant is not applying for an admission. But do you agree with that analogy or that example that the BIA is offering? Or are you telling me that that example wouldn't work in our court based on our precedent? Is that example accurate? Well, that example is accurate, but the court, I would say the court doesn't need to get to that part of the Board's decision about whether this petitioner is applying for admission because the court, this court's already previously held in Revis and Povita that admission is used in the waiver statute means an alien who's outside the United States. In other words, you can't be here for 20 years illegally and walk in one day and say I'm applying for admission. Well, not with respect to the waiver statute. Not with respect to 1182. I mean, in a sense. So I'll stop there. All right. Unless the court has any additional questions, we ask the court to deny the petition. All right. Thank you. Thank you. Mr. Echols. Thank you. Thank you again, Your Honor. I wish I had another 15 minutes, Your Honor. It seems like here. So I'm not quite sure where to start. I almost want to go back again to just reiterate. So someone like the petitioner here who has been in the United States without status for this long period, there's actually a number of ways that they could apply for admission. As you, Your Honor, Judge Carnes have said, a marriage is one way, especially if the person has a petition that was filed before 2001. That person could straight up apply for a green card through Section 1255. That's not your person, though, right? No, that's not my person. Let's just stick with your person. Okay. I just want to make clear, though, that really being without papers like my person's position is really not as big of a disability if you line up for the vehicles that exist. The vehicle that he is best suited to pursue is this special rule cancellation application. And if you start at the beginning of the. If he had not had the misfortune or maybe here the good fortune of being able to allege that his wife had abused him physically, he wouldn't have much of a route at all. Because of his crimes, yes. And because of the regular cancellation, which he would otherwise be a perfect candidate for, bars him due to its reference to convictions. And that's a point I think that the court should take careful note of. When they crafted the relief called special rule cancellation, they changed from saying that you were barred if you were convicted to saying you were barred if you were inadmissible. That's a term of art. And Congress, as this court has held, I believe, Congress has held to know the legal meaning of the words it uses when it makes a statute. So it intentionally used the word inadmissible rather than convicted, which it had already used in the prior version. When it used that word inadmissible and referred specifically to certain subsections of Title VIII, Section 1182, including those grounds for being convicted of a crime involving moral turpitude, it wrapped in not only those grounds, but also the waiver that is explicitly referred to in 1182. It wrapped them all up into the vehicle called cancellation of removal. So barred if he was convicted is the other provision, not the special rule, and he was convicted, correct? Oh, certainly, Your Honor. So barred if he's inadmissible based on crimes of moral turpitude helps him how? Well, there's a waiver for inadmissibility. There is no waiver for a conviction. And the waiver at Title VIII, Section 1182H, does not remove the fact of a conviction that's also well established. All it does is waive the ground of inadmissibility, which again loops us back around to where the cancellation statute says he's not eligible if he's inadmissible. But if that inadmissibility has been forgiven, then that ground of ineligibility for the waiver is overcome. So we're just chasing our tail. We just keep going in circles. Oh, it's not in circles at all. It's one loop. And if he's granted the waiver in concurrence with the application for cancellation, then he receives his green card. And, Your Honor, I don't think it's a fair thing to call any adjustment of status automatic. He's applying a 10-page form with a filing fee. There's extensive biographical information. There's grounds of ineligibility. There's requirements for eligibility. So it's not that it's an automatic adjustment or a thing that happens by operation of law. It is the relief that the cancellation of removal overcomes a number of grounds of inadmissibility itself. And then coupling up a waiver under Section 1182H would remove the one remaining ground of inadmissibility. And all this all rests, if your legal interpretation, all rests on his allegation that he was the victim of spousal abuse by his wife. Correct. That's his one hope to stay. And he has been found to have been a victim in a bona fide marriage of When they revoked that petition later, it was based on the convictions. It was based on the lack of a good moral character. But it did not invalidate the fact that he has been found to be a victim of domestic violence, which gives us hope that if we were to get to pursue the application for cancellation, that a judge might also find that he has been a victim of domestic violence. And the child abuse he was convicted of plays no role in this because they're not basing any of their decisions on the fact he's convicted of child abuse. Well, they have found affirmatively, and we're not contesting, that that crime is a crime involving moral turpitude, which makes him inadmissible. And that's what's barring him from proceeding just immediately with the special rule cancellation application. The way the rules would work would be if he has on one occasion or more been attacked by his wife, but he at the same time has abused his children, he gets to stay because of the fortuity that his wife abused him, even though he's abused children. That's how the law works. I would not say that that's the way the law works, Your Honor. But I believe Congress shifted from saying conviction, and I see that I'm over my time. You can finish. Your Honor, I believe that they switched from saying conviction to saying inadmissible as part of the package of ameliorative tools that is represented by the Violence Against Women Act. So it expanded the grounds to include the coupling of a waiver. It broadened a preexisting waiver that is incorporated by reference. It lowered the standard of hardship required to be proven. It shortened the period of physical presence required. So, in other words, cancellation approval is a difficult thing to win. Special rule is easier to win, but only because out of recognition of the fact that this person has been a victim of domestic violence, it's not a positive thing. It's something that makes them a special population. So, Your Honor, we would beg the court to start at the beginning of the statute and read through, and when you get to the very last words, which is those last words of the waiver, adjustment of status, to understand that that's a term of art, that's a global reference to all the forms of adjustment of status, and therefore it was not necessary to refer specifically to cancellation or removal and adjustment of status. The government is here creating an ambiguity where one does not exist, as this court found in Fajardo. And we would beg the court to find that this is a clear, unambiguous statute and that they do not need to defer to a matter of YNP and, in fact, vacate the decision in this matter and remand it so that this petitioner may pursue the relief available to him. I thank you very much for your time today, Your Honor. Thank you. All right. All right. Third and last case is Alsabrook.